BOWEN W. SIMMONS, Retired Circuit Judge.
The indictment as originally returned contained three counts; (1) Burglary in the second degree; (2) Grand Larceny; and (3) Possessing and Receiving Stolen Property. The third count was stricken by the State. The trial jury returned a verdict of guilt on Count 2. The trial judge imposed a penitentiary sentence of six years.
The burglarized premises was a storehouse or shop, owned and in possession of R. W. Sheet Metal, a corporation, located in the City of Huntsville, Madison County, Alabama. The time of the burglary was in the late evening of Saturday, November 26, 1977 or the early morning hours of Sunday, November 27, 1977, at which time Mr. Rufus Warren, a principal stockholder (with his wife) and operator of the business, received a telephone call about the breakin. He called his uncle, James Warren, whereupon the two went to the location and discovered the place of entry. Rufus thereupon called the police who reported, but failed to find the burglar. They left after a futile look around. The two Warrens decided to stay and see if the offender might come back.
While secluded in an office with the lights out, at about 5:50 a. m., Sunday, they observed a person alight from an automobile' and hurriedly cross the road in the direction of the building wherein they were waiting. Soon, they heard a noise which they investigated to find an intruder inside.
The uncle intercepted him inside the building and was able to observe him for about thirty seconds before he escaped from the building by taking a ceramic jar and breaking a window through which the subject escaped.
The police appeared again and investigated. They found some fingerprints on the jar. The prints were lifted and preserved for future comparison. Only Mr. James Warren, the uncle, was able to get a good look at the man. The owner, Mr. Rufus Warren, heard the sound of his voice but did not observe him. Mr. James Warren heard him say “Rufus.”
A detective went to the house of defendant to make an investigation. There, he found defendant who went to the detective room of the police station with the officer but not under arrest, so the officer testified. There, defendant was observed about 11:00 a. m. on Monday, November 28, 1977, by both Warrens.
Mr. Rufus Warren testified that he did not recognize defendant from his features, but in his judgment his voice was the one which he had heard in the building. It seems that defendant had worked for Mr. Rufus Warren in the building for about two weeks just before the burglary. His services were terminated because they were unsatisfactory.
It appears that Mr. James Warren, the uncle, did not at first recognize defendant, who was sitting down with his face turned and wearing glasses. He then saw only the side of his face. Mr. Warren, out of the presence of defendant, asked the detective to get him to stand up and remove his glasses. When this was done, Mr. Warren immediately recognized him. He also identified him in court at the trial. Mr. Warren testified that he wanted to be positive of the identification and did not want to reach a hasty decision while defendant was in a sitting position with glasses oh. When asked why he did not shoot him with a pistol in his possession when the subject escaped through the broken window, the witness said he did not want to kill him. It is to be noted that a motion to suppress the identifying evidence was heard and evidence, supra, adduced outside the presence of the jury. The motion was overruled.
The only issue here asserted by defendant is the adverse ruling to suppress the out-of-court identification of defendant as well as the in-court identification. The contention is that such identification was suggestive, tainted and inadmissible.
Mr. James Warren testified before the jury on cross-examination that defendant, on the night that he was accosted in the burglary, had on brown pants and a greenish-type shirt and a green “toboggan” on *45 his head but not over his face. He did not have on glasses. He further testified that the lighting was good in the hallway when he first saw defendant and that the office lights “stay on all night.” The hallway lights were fluorescent type and were turned on; all the lights in the' hallway were turned on. He further said he was face to face with defendant in the hallway for ten to fifteen seconds and they were about ten feet apart.
It thus appears from the evidence that, while he was in the burglarized building, that the witness got a good view of defendant’s face and his body while he was standing and was able positively to identify him in the detention room when he stood up and removed his glasses.
We think the witness’ hesitancy to identify the defendant when the latter was sitting down with his face to the side and with glasses on showed a desire on the part of the witness to avoid a misidentification; that he wanted to be sure. He was positive after subject stood and removed his glasses.
We are impressed that the identification procedure, while defendant was detained in the detention room, met the guidelines established in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, as they appear in Wilson v. State, 57 Ala.App. 125, 326 So.2d 316(2) cert. den. 295 Ala. 429, 326 So.2d 319, also in Childers v. State, Ala. App., 339 So.2d 597. As was done in Wilson, supra, we quote from Neil, supra, as follows:
“Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is ‘a very substantial likelihood of irreparable misidentifieation.’ Simmons v. United States, 390 U.S. 377, at 384, 88 S.Ct. 967, at 971, 19 L.Ed.2d 1247. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of ‘irreparable’ it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant’s right to due process, and it is this which was the basis of the exclusion of evidence in Foster. [Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402] * * * ’ (Bracketed matter added.)
* sf. * * * #
“We turn, then, to the central question, whether under the ‘totality of the circumstances’ the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *’ 409 U.S. at 198-200, 93 S.Ct. at 381, 34 L.Ed.2d 401 at 410-411.”
We are unwilling to hold that the “show-up”, as above noted, was suggestive and that the identification was tainted. The physical posture of defendant sitting with his face sideways and glasses justified a postponement of identification until the subject assumed a standing posture without glasses and a direct facial confrontation. Besides the witness also recognized his voice.
We failed to note, supra, that an expert witness for the State testified that the lifted fingerprints were the same as those of defendant.
We also note that defendant, when he took the stand, testified that on Friday, November 25, 1977, he was in the shop and put his hand and fingers on the ceramic jar that was thrown through the window. Mr. Rufus Warren testified that the ceramic jar was not brought to the building by his wife *46 until Saturday, November 26, 1977. Defendant denied his guilt and asserted an alibi that he was somewhere else.
We find no error in the record to reverse. The judgment is affirmed.
The foregoing opinion was prepared by the Honorable Bowen W. Simmons, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.