The defendant was indicted and convicted for burglary in the first degree. Sentence was ten years' imprisonment. The defendant is represented by retained counsel both at trial and on appeal.
The State contends that the defendant broke into a trailer and attempted to sexually assault Mrs. Ruby Odom and her eleven year old daughter, Wanda. Only the eyewitness testimony of Mrs. Odom and her daughter identified the defendant as the intruder. There was no physical evidence placing the defendant at the scene of the crime.
On appeal the only contention by the defendant is that the pretrial identification procedure was so unnecessarily suggestive of and conducive to irreparable mistaken identification as to deny him due process of law.
Within minutes after the crime had occurred, Mrs. Odom and Wanda had identified the defendant as the intruder. The defendant was apprehended almost immediately having been found sitting on the front steps of his trailer which was located only one or two streets from Mrs. Odom's trailer. The crime occurred about 1:30 on the morning of August 4, 1979. When discovered, the defendant was perspiring "profusely". The police brought the defendant back to Mrs. Odom's trailer and asked both Mrs. Odom and her daughter to identify "the suspect".
Mrs. Odom and her daughter both testified that Wanda first identified the defendant. (Officer L.L. Beavers testified that Mrs. Odom saw and identified the defendant before her daughter did.)
Mrs. Odom testified that she initially refused to identify the defendant because she was scared that "he would come back and hurt" them. At that time, Wanda "jumped up off the couch and went to the door and said, that that was the man that had broken in our house."
Wanda testified that she observed the defendant who was standing on the patio to their trailer. A police officer was standing beside him "[a]nd the others were near; checking fingerprints." There were "in between four and eight" officers present. The officer with the defendant was "asking the guy some questions, or something like that."
At trial Wanda testified that she could not remember if the officers "was reading *Page 1123 
[the defendant] his rights, or asking him some questions." The defendant was facing Wanda and she positively identified him. She was never shown any pictures of the defendant.
Mrs. Odom also identified the defendant. However, when she looked out the window of the trailer to make her identification, the defendant was "sitting on a concrete block right below the window." Mrs. Odom only saw the back of the defendant's head and never saw his face. Despite this she testified that she could identify the defendant "from being the guy that was in my daughter's room when I went in there." Mrs. Odom stated that, based on her examination of the man while he was in the trailer, there was no doubt that the man in the trailer was the same man she saw outside.
On August 6th, Mrs. Odom was shown three photographs of the defendant. She was not shown photographs of anyone else. She was told that the defendant had a past record for burglary.
Even if there has been an unduly suggestive pretrial identification procedure, the in-court identification testimony need not be excluded if the prosecution can establish by clear and convincing evidence that the in-court testimony, rather than stemming from the unfair pretrial confrontation, has an independent source. Brazell v. State, 369 So.2d 25, 29
(Ala.Cr.App. 1978) cert. denied, 369 So.2d 31 (Ala. 1979).
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible."
Matthews v. State, 361 So.2d 1195 (Ala. 1978).
In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382,34 L.Ed.2d 401 (1972), the United States Supreme Court listed five factors which should be considered in determining whether an independent basis exists for the in-court identification. See also Griffin v. State, 356 So.2d 723 (Ala.Cr.App.) cert. denied, 356 So.2d 728 (Ala. 1978).
We now apply the Neil standards to the facts of this case.
A. Both Mrs. Odom and Wanda had an opportunity to view the criminal at the time of the crime. Both observed the defendant's face in Wanda's bedroom where a light from the bathroom was shining directly on the bed. Wanda stated that she observed the defendant's face for "one or two minutes". Although Mrs. Odom did not state how long she observed the defendant, she testified that she "stared" at him.
B. There is no direct testimony on the witnesses' degree of attention. Both were extremely frightened. Mrs. Odom stated that when she realized that the intruder was not her boyfriend her "mind went blank" and she was "petrified" and for those reasons did not think about shooting the man when he jumped up and ran out of the trailer although she was holding a pistol and had threatened to shoot. She testified that she was nervous and scared to death. The police helped calm her down. Wanda testified that she was so scared that she could not scream.
C. The witnesses' prior descriptions of the criminal were very accurate. One investigating officer testified that the defendant fit the description "they" had given "per word". Another officer stated that the defendant fit the description the "young lady" had given him "exactly". Neither witness mentioned a tattoo on the defendant's left upper arm or a scar on his face. However, we have no picture of either of these distinguishing features and have no idea of how distinctive or prominent they were, if indeed, they were at all.
D. Both witnesses exhibited a high level of certainty at the confrontation. Mrs. Odom stated that she positively identified the defendant even though she only saw the back of the defendant's head. She testified *Page 1124 
that she was positive that the defendant was the intruder and that her identification was "from [the defendant's] being the guy that was in my daughter's room when I went in there" and that her in-court identification was not based on the time she observed the defendant outside her trailer after his capture. One investigating officer stated that when Mrs. Odom identified the defendant she said that she "thought" or "believed" that he was the intruder. While the fact that Mrs. Odom only observed the back of the defendant's head at the confrontation does give us some concern, we do not think that it invalidates her identification. See United States v. Lee, 485 F.2d 1075
(D.C. Cir. 1973), where it was held that a confrontation in which the robbery victim viewed the defendant while he was lying face down on the floor and was handcuffed with his arms behind his back was permissible and was not highly suggestive. Additionally, we note:
 "It undoubtedly is true that face-to-face encounters are involved in most cases where on-the-scene identification evidence is held to be admissible. . . . However, a witness' close observation of facial characteristics is not necessary to warrant such a confrontation. Where a witness has had sufficient opportunity to observe the figure of a person committing a crime, and has a vivid impression of such characteristics as height, build, race, hair style, and clothing, an on-the-scene identification may be appropriate." Nichols v. United States, 343 A.2d 336, 344 (D.C.App. 1975).
Wanda testified that she identified the defendant because "he resembled the man very close, very much." She stated that she was positive about her identification and that her identification was based "on the looks, the identity that I had given" the police.
E. The length of time between the crime and the confrontation was extremely short. Immediately after the intruder ran away, Mrs. Odom telephoned the police. While she was still on the telephone the police arrived and Mrs. Odom initially thought that the criminal had returned. There was testimony that the police arrived when the criminal had "just left". Two or three minutes after the first policemen arrived, another officer arrived with the defendant in custody.
One-man showups that are conducted shortly after a crime has been committed are not per se violative of due process and evidence obtained through the use of such an identification procedure is not necessarily inadmissible. The question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedures may have been suggestive. United States v. Howard,426 F. Supp. 1067, 1070 (W.D.N.Y. 1977). The test to be applied in determining whether due process is denied by introduction of proof of the results of a pretrial "showup" is whether in the totality of circumstances the process was so suggestive as to create a very substantial likelihood of misidentification. Neilv. Biggers, 409 U.S. 188, 196-201, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972).
Although the opportunity of the witnesses to observe the defendant during the crime was brief, the showup occurred only minutes later and the witnesses were able to identify the defendant by distinctive characteristics of his clothing and general appearance. See United States v. Caades, 549 F.2d 1303,1305-1306 (9th Cir. 1977). As was noted in U.S. ex rel. Moorev. People of State of Ill., 577 F.2d 411, 413 (7th Cir. 1978):
 "[W]e are not free to suppress a witness's identification of a suspect at trial merely because the suspect had been exposed to the witness in a highly and unnecessarily suggestive manner. Rather, in asserting whether the suspect's right to due process of law has been violated by the admission of an in-court identification, we are bound to weigh the corrupting effect of the suggestive confrontation against indicia bearing on the reliability of the identification for `reliability is the linchpin in determining the admissibility of identification testimony.'"
 Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). *Page 1125 
Weighing the "totality of the circumstances" bearing on the question of whether the suggestive confrontation gave rise to a "very substantial likelihood of misidentification" and taking into account many factors, including those listed in Neil,409 U.S. 188, 198-200, 93 S.Ct. 375, 382, we conclude that Mrs. Odom's and Wanda's identifications of the defendant at trial were reliable even though their initial confrontations with him after the crime were suggestive.
These same factors reveal that the witnesses' in-court identification of the defendant was based upon observations of him independent of the pretrial confrontation. United States v.Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
The justification for the return of a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before is found in Russell v.State, 408 F.2d 1280, 1284 (D.C. Cir.), cert. denied,395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).
 "Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.
 "Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his `mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an `unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.
 "Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will `if anything promote fairness, by assuring reliability * *.'"
An "unusual number" of policemen present at the time of the identification and "nervousness on the part of the eyewitness" do not, in and of themselves, inject those "special elements of unfairness" rendering the confrontation procedure so unduly suggestive as to violate due process. United States v. Hines,455 F.2d 1317, 1328 (D.C. Cir. 1971), cert. denied,406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). The same is true of the fact that the two victims were together when they identified the defendant. United States v. Wilson,435 F.2d 403, 405 (U.S.App.D.C. 1970). These are only factors which must be weighed and balanced against the reliability of the identification. After examining the totality of the circumstances we do not believe that the identification procedure was so unnecessarily suggestive and the identification itself so unreliable as to require a reversal of this case under the prevailing case law. Dominant aspects of the circumstances in this particular case are that the identifications were made virtually within minutes of the crime; that both witnesses were positive in their identifications; and that the witnesses had given accurate descriptions of the criminal.
In addition to addressing the single issue raised on appeal, we have searched the record for error as required by law. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur. *Page 1126