[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 243 
Walter Ray Matthews was indicted for the February 28, 1980, first degree robbery of Mrs. Debra Perkins. The jury found the appellant "guilty as charged". Pursuant to the Temporary Rules of Alabama Criminal Procedure, a sentencing hearing was held, and the trial court set the appellant's punishment at twenty years' imprisonment. From the conviction, he now appeals, in forma pauperis.
During the afternoon and evening of February 27-28, 1980, Mr. and Mrs. William Perkins, Jr. attended the Southeastern Conference Basketball tournament being held at the Birmingham-Jefferson Civic Center. They left between 10:15 and 10:30 p.m. and had dinner at a local restaurant located in Homewood and three or four minutes from their motel, the Rodeway Inn. Around midnight, they left the restaurant and drove to their motel. As they drove into the parking lot, they noticed a car containing three or four people closely following them. Mrs. Perkins described the car as a big, heavy, light colored, older model with large headlights.
Mrs. Perkins testified that after they had parked their car, a 1979 two-door Oldsmobile Cutlass, the car following them sped around the motel corner. She could not identify the vehicle and never saw it again. While exiting from their car, two armed black males assaulted the couple and threatened to shoot them if they did not give them their money. Mrs. Perkins stated that one of the robbers grabbed her purse, containing $7.00 and some credit cards, held her arm, and pushed her into the motel wall. She saw his partner hit her husband on the jaw, breaking it, and take his billfold and car keys. The robbers then made the couple "stoop over" next to the motel as they fled in the car. The purse and billfold were subsequently returned.
Mrs. Perkins testified that the robbery was consummated within three or four minutes and that the area was well lit. She stated that she got a good look at her assailant and described him as a young black male in his late teens or early twenties with brown eyes, black hair, but without facial hair, wearing army colored fatigue pants and cap and a red-orange coat. She stated that she watched him and his gun because he appeared nervous and was shaking it.
The couple went inside the motel wherein they reported the robbery to two Jefferson County Deputy Sheriffs. Within five minutes Homewood Police Officer Phillip Dodd arrived and questioned them. Within thirty minutes of the robbery, the Perkinses were taken to another location in Birmingham where they identified their car and Mrs. Perkins identified one of two suspects in custody as her assailant. He was wearing the same clothing as when the robbery occurred. Mrs. Perkins testified that while being driven to their car, the police told her that they wanted them to identify their car and look at some individuals who had been fleeing from the car although they might not be their assailants. She made an in-court identification of the appellant as being the same person she had previously identified. After their car was processed for fingerprints, the Perkinses were taken to a local hospital where Mr. Perkins received medical treatment. Surgery was subsequently performed on his jaw. *Page 244 
Mr. Perkins testified to the events of the robbery in substantially the same manner as his wife. He stated that he could not describe or identify his wife's assailant. He stated that while being transported to their car, Officer Dodd told them that they had apprehended a couple of suspects that they wanted them to view.
Birmingham Police Officer Michael Crawford testified that on February 27, he was working the 11:00 p.m.-7:00 a.m. shift. Around 12:12 a.m. on February 28, 1980, he was on routine patrol and saw two cars parked in the parking lot at George Ward Park in Birmingham. He knew that the park closed at 11:00 p.m. Officer Crawford had not received any radio dispatch concerning the robbery. When he drove toward them, the two cars hastily exited the park. Officer Crawford met the cars as the left the park and identified them as a Chevrolet Impala and an Oldsmobile Cutlass each containing two occupants. His description of the passenger of the Cutlass was similar to that given by Mrs. Perkins of her assailant. He described the driver of the Chevrolet as a black male wearing a red shirt and a brown colored jacket.
Officer Crawford pursued the vehicles and found them abandoned on a street with their engines running, lights on, and doors open. During the chase he placed a bulletin on the radio concerning the vehicles, the driver of the Chevrolet, and the passenger in the Cutlass. He secured the scene and heard a dispatch concerning the Cutlass. Officer Crawford called for an evidence technician to process the vehicles. Officer Bobby Zeanah responded to the call and upon his arrival, Officer Crawford's partner, Officer Ben Herron, turned over a .22 caliber pistol he had found in front of the Cutlass. About five to seven minutes after the chase, Officer Crawford saw the passenger from the Cutlass in the back of another patrol car. Officer Crawford identified the appellant as the passenger. Officer Crawford witnessed the Perkinses' identification of the robbers as well as their car.
Birmingham Police Officer Bert Bowlin testified that in the early morning hours of February 28, he heard the bulletin placed on the radio by Officer Crawford and went to the scene of the abandoned cars. After talking to Officer Crawford, he began to search the area. Not more than ten minutes from the time he had heard the bulletin and within three or four blocks of the abandoned cars, he saw two black males, one wearing an orange colored jacket. He stopped and frisked them and transported them to the scene, telling the suspects that he was taking them to let someone look at them. When he returned to the scene, Officer Bowlin testified that Officer Crawford identified one of the suspects. Afterwards, Officer Bowlin arrested the suspects, gave them their Miranda rights, and transported them to jail.
Birmingham Police Officer Larry McDonald testified as to his fingerprinting of the appellant at the city jail and identified a copy of them. He stated that they were made in the regular course of business and that with the exception of some numbers on the fingerprint card, it was in the same condition today as when he had made it.
Homewood Police Officer Phillip Dodd testified to his February 28, 1980 interview with the Perkinses. He transported them to identify their car and the suspects.
Birmingham Evidence Technician Robert Zeanah testified to his February 28, 1980, processing of the two abandoned vehicles. He lifted several latent fingerprints from both cars. He received the pistol found by Officer Herron but could not lift any fingerprints from it. He separated the latent fingerprint lifts, placed them in separate envelopes, and on the same day placed them in a locked box located at the ID Bureau at City Hall. After examining the lifts, Officer Zeanah stated that with the exception of some writing on the lift cards, they were in the same condition as when he had made them.
Birmingham Fingerprint Technician Sandy Triplett testified that she was in charge of the ID unit of the Birmingham Police Department. After testifying on her *Page 245 
qualifications, Mrs. Triplett stated that she made the copy of the appellant's fingerprint card which is submitted, as all fingerprint cards made at the city jail to her unit, as a matter of routine business. She stated that she had seen the latent fingerprint lifts made by Officer Zeanah and that they had been under her unit's custody and control since February 28, 1980.
Mrs. Triplett testified that with an employee in her unit she made independent comparisons of the submitted fingerprints. She stated that several prints found on the Cutlass and one found on a beer bottle found in the Chevrolet were made by the appellant.
Mrs. Triplett's testimony concluded the State's presentation of its case.
The appellant moved to exclude the state's evidence, which the trial court overruled.
 I
Appellant contends that the trial court erred in overruling his motion to exclude the state's evidence and denying his motion for a new trial on the ground that the state failed to prove a prima facie case of first degree robbery.
After a careful review of the state's evidence, we find the evidence sufficient for the jury to have found the appellant guilty of the charged crime. Consequently, the trial court properly overruled both motions, §§ 13A-8-41, -43 Code of Alabama 1975 (Supp. 1977); See generally Warren v. State,261 Ark. 173, 547 S.W.2d 392 (1977).
 II
Appellant asserts that the trial court erred in overruling his demurrer to the indictment, contending that it is vague and confusing.
Omitting the formal parts, the indictment reads: (R. 207)
 ". . . WALTER RAY MATTHEWS, whose name is otherwise unknown to the Grand Jury, did, in the course of committing a theft of one lady's purse and Seven Dollars of the lawful currency of the United States of America, a more particular description and denomination of which is to the Grand Jury otherwise unknown, the property of Debra Virginia Bell Perkins, used force against the person of Debra Virginia Bell Perkins, or against the person of another present, with intent to overcome her physical resistance or physical power of resistance, while the said WALTER RAY MATTHEWS was armed with a deadly weapon, a pistol, in violation of § 13A-8-41 of the Alabama Criminal Code. . . ."
Section 13A-8-41 (a)(1) Code of Alabama 1975 (Supp. 1977), states:
 "A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 (1) Is armed with a deadly weapon or dangerous instrument; . . ."
Section 13A-8-43 (a)(1) Code of Alabama 1975 (Supp. 1977), states:
 "A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 (1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; . . ."
If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute creating the offense is generally valid. Harrison v. State, Ala.Cr.App., 384 So.2d 641 (1980).
Pursuant to § 15-8-25 Code of Alabama 1975, an indictment must state the facts constituting the offense, in ordinary and concise language, in such a manner as to enable a person of common understanding to know what is intended. It must likewise inform the accused not only of the nature of the offense, but also of the particular act or means by which it was committed.Harrison, supra, at 643.
We find the indictment form used in the instant case to have clearly, intelligently, and properly apprised the appellant of the crime with which he was charged. *Page 246 
Thus, the trial court correctly overruled the appellant's demurrer.
 III
Appellant contends that his in-court identification by Mrs. Perkins should have been suppressed as it was impermissibly tainted by a suggestive showup at the scene of the abandoned vehicles, and an improper display of his photograph to Mrs. Perkins at his preliminary hearing.
 A
There is no prohibition against a viewing of the suspect alone in what is termed a "one-man showup" when such occurs near the time of the alleged incident. It does not tend to being about misidentification, but rather, tends to insure accuracy. Bates v. United States, 405 F.2d 1104 (D.C. Cir. 1968).
In the case sub judice, the view was of two suspects. It occurred within thirty minutes of the robbery after Mrs. Perkins had viewed, under good lighting conditions, her assailant for three to four minutes. Furthermore, her description of his clothing was made with detail and specificity. In addition, Mrs. Perkins testified during the appellant's motion to suppress hearing that her identification at the scene of the abandoned vehicles was based upon her observations made at the time of the robbery.
Under these circumstances, we see no impermissible suggestiveness in the two-man showup so as to taint the in-court identification. Donahoo v. State, Ala.Cr.App.,371 So.2d 68, cert. denied, Ala., 371 So.2d 74 (1979); Douglas v.State, Ala.Cr.App., 366 So.2d 373 (1979); Cornelius v. State,49 Ala. App. 417, 272 So.2d 623 (1973); Payne v. State,48 Ala. App. 401, 265 So.2d 185, cert. denied, 288 Ala. 748,265 So.2d 192, cert. denied, 409 U.S. 1079, 93 S.Ct. 703,34 L.Ed.2d 669 (1972). Thus, appellant's assertion is without merit.
 B
At appellant's motion to suppress hearing, which focused primarily upon his second assertion of error, Mrs. Perkins testified that at the appellant's preliminary hearing she identified the appellant as her assailant. She stated that she was shown a photograph of the appellant by a police officer after she made her identification. She testified that each identification of the appellant was based upon the events which transpired during the robbery and her observations thereof at that time.
Mr. Tim Massey, a practicing attorney in Birmingham, testified that on the day of the appellant's preliminary hearing he was representing the appellant's co-defendant and was present during Mrs. Perkins' identification of the appellant. Mr. Massey testified that "she seemed to be a little doubtful as to the identification" of the appellant. He stated that Mrs. Perkins was shown the appellant's photograph prior to her identification of him. Mr. Massey stated that he did not know if she had made any prior identification of the appellant.
When an in-court identification is shown to have a basis independent of any pretrial identification or confrontation, it is properly admitted in evidence. Welch v. State, Ala.Cr.App.,384 So.2d 638 (1980); Speigner v. State, Ala.Cr.App.,369 So.2d 39, cert. denied, Ala., 369 So.2d 46 (1979).
As we stated in Matthews v. State, Ala.Cr.App.,361 So.2d 1195, 1198 (1978),
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible." (Citations omitted)
The mere fact that a witness is shown photographs does not establish suggestiveness. Henderson v. State, Ala.Cr.App.,373 So.2d 1218, cert. denied, Ala., 373 So.2d 1221 (1979). *Page 247 
In view of the totality of the circumstances, we do not find the in-court identification of the appellant tainted by the exhibition of his photograph to Mrs. Perkins. The evidence is uncontradicted that she based each identification of the appellant upon her recollection of the events surrounding the robbery and observations thereof.
We are convinced that Mrs. Perkins' view of the appellant's photograph had little if any influence upon her in-court identification of him.
Consequently, we find no error in the trial court's denial of the appellant's motion to suppress and its overruling of his objection to this in-court identification.
 IV
Appellant contends that the trial court denied him the opportunity to confront and cross-examine Officer Crawford, by refusing to allow him to conduct a voir dire examination of the witness. Appellant's request was made during the direct examination of Officer Crawford and immediately prior to his identification of the appellant as the passenger in the Cutlass. The appellant conducted a thorough cross-examination of Officer Crawford.
In Shelton v. State, Ala.Cr.App., 384 So.2d 869, 870, cert. denied, Ala., 384 So.2d 871 (1980), we stated:
 "A trial court is not obliged to take witnesses out of turn merely because opposing counsel wants to examine them on voir dire at counsel's convenience. The trial judge is vested with discretion in the conduct of a trial, and appellate courts will not interfere unless there has been a clear abuse of that discretion. . . . The trial judge has a duty to move the testimony expeditiously along." (Citations omitted.)
No abuse of the trial court's discretion occurred in its refusal to interrupt the examination of a witness to allow opposing counsel to examine the witness on "voir dire." Harrisv. State, Ala.Cr.App., 371 So.2d 979, cert. denied, Ala.,371 So.2d 984 (1979).
 V
Lastly, appellant contends that the trial court erroneously admitted evidence illustrating his commission of a separate and distant offense.
During the direct examination of Birmingham Evidence Technician Robert Zeanah the following occurred:
 "Q The lifts that you made on both of these automobiles, what did you do with them?
 A They were placed — Each case being separate, they were placed in their appropriate . . .
. . . . .
 A And both manila envelopes were placed in that box at City Hall." (R. 103)
We see no error. Officer Zeanah could have been referring to the separation of the fingerprints by vehicles, defendants, crimes, or defendant and crime. Furthermore, this portion of his testimony was offered to establish the requisite chain of custody for the subsequent introduction of the relevant fingerprints into evidence.
The record does not support the appellant's contention. Thus, the trial court did not err in overruling his objection to the admission of this testimony.
We have carefully examined the record and find same to be free of error. The judgment is therefore affirmed.
AFFIRMED.
All the Judges concur. *Page 248