406 So.2d 998 (1980)
Donald LENTINI
v.
STATE.
3 Div. 252.
Court of Criminal Appeals of Alabama.
November 25, 1980.
Rehearing Denied January 20, 1981.
After Return to Remand June 23, 1981.
Rehearing Denied August 4, 1981.
*1000 George L. Beck, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen. and Joseph G. L. Marston, III, Asst. Atty. Gen, for appellee.
BOWEN, Judge.
The defendant was indicted and convicted for the possession of marijuana. Sentence was six years' imprisonment and a fine of $1,500.00.
The marijuana was seized in a warrantless search of a "mini-warehouse" which was rented by a third party who had given the defendant permission to use some of the contents in the warehouse. The defendant contends that the trial court failed to suppress evidence that was the fruit of an unlawful search and seizure. The State contends the defendant lacks standing to contest the validity of the search and seizure.
The trial court's decision denying the motion to suppress was made after the United States Supreme Court's decision in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), but before the decision in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The significance of this is that in Rakas, the survival of the automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), was not decided. This rule of Jones was specifically overruled in Salvucci. See also Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). In Salvucci it was held:
"The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation. As we hold today in Rawlings v. Kentucky, post, at [100 S.Ct. at] 2556, legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest."

* * * * * *
"While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see Rakas, supra, 439 U.S., at 144, n. 12, 99 S.Ct., at 430, n.12, property rights are neither the beginning nor the end of this Court's inquiry. In Rakas, this Court held that an illegal search only violates the rights of those who have a `legitimate expectation of privacy in the invaded place.' Rakas, id., at 140, 99 S.Ct., at 428. See also Mancusi v. DeForte, [392 U.S. 364, 88 S.Ct. 816, 19 L.Ed.2d 869] supra."
* * * * * *
"As in Rakas, we find that the Jones standard (legitimately on the premises) `creates too broad a gauge for measurement of Fourth Amendment rights' and that we must instead gauge in a `conscientious effort to apply the Fourth Amendment' by asking not merely *1001 whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched."
Thus under Salvucci the test of standing is whether the defendant had a legitimate expectation of privacy from governmental invasion. Whether he was legitimately on the premises is a relevant but not controlling or determinative factor in deciding one's expectation of privacy. Moreover, even had the defendant claimed ownership of the drugs found in the warehouse, this bare claim would not entitle him to challenge the search regardless of his expectation of privacy. Rawlings.
Since the issue of the defendant's right to challenge the search as defined in Salvucci was not presented to the trial court, we think it appropriate to remand so that the defendant will have an opportunity to demonstrate, if he can, that his own Fourth Amendment rights were violated. This is the same procedure followed by the United States Supreme Court in Salvucci.
REMANDED WITH DIRECTIONS.
All Judges concur.

AFTER RETURN TO REMAND
BOWEN, Judge.
After a hearing held pursuant to the order of this Court, the trial judge entered the following order:
"ORDER
"In accord with the November 25, 1980 remand of the above-styled case by the Alabama Court of Criminal Appeals, this Court has provided the Defendant/Appellant, Donald Lentini, an opportunity to demonstrate violation of his Fourth Amendment rights.
"On January 20, 1981, the application for rehearing by Appellee, State, of Alabama, was overruled and request for finding of additional facts was denied.
"After re-examination of the supplemental transcript and hearing of arguments by both parties, this Court finds that Mr. Lentini had a `legitimate expectation of privacy in the invaded place.' Under the theory of Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Defendant testified in the hearing to suppress on March 3, 1980 that he had paid rent on the warehouse. (Supp.Trans., P-28)
"`Q. You paid rent on this warehouse?
A. Yes, sir.
Q. When?
A. I don't remember the exact date, but that was in the deal with Gloria (Goldson, Lessor of the warehouse) loaning me the furniture. That I was to keep upyou know, pay for the place that it was being kept, what I didn't use.' (Supp.Trans, p-28-29)
"This arrangement between the Defendant and Gloria Goldson gave him a legitimate expectation of privacy in the warehouse.
"Upon re-examination of the evidence presented in the supplemental transcript, this Court reaffirms that the original motion of Donald Lentini as to the amphetamines was well taken, in that they were not in plain view of the police officers making the arrest. This Court previously granted the Motion to Suppress as it pertains to the amphetamines. However, the Court finds, under the facts here, that marijuana was in plain view from the outside of the warehouse. The following facts are relevant:
"On the evening of September 15, 1979, at approximately 10:00 P. M., Officers Scott Pilgreen and P. T. Marshall of the Montgomery City Police Department were on routine patrol when they drove by the Storsafe Mini-Warehouse on the Eastern Bypass and observed two black chopper motorcycles parked outside one of the miniwarehouse doors. Because it was unusual and suspicious to see two motorcycles parked there at 10:00 at night the officers believed that a burglary was in progress and pulled up to investigate.
"When the officers pulled up to the motorcycles, a white male stuck his head out *1002 the door, looked directly at the police officers, and then stuck his head back inside the warehouse. Office Pilgreen radioed the dispatcher that a burglary was in progress. The officers waited a minute or two trying to decide what to do.
"The Defendant and another suspect, Barry Williamson, came out of the warehouse and left the door open. Officer Pilgreen testified that the door was left `wide open' and Officer Marshall testified that it was one-half to three-fourths open.
"While Officer Pilgreen kept him covered, Officer Marshall approached the suspects. According to the Defendant's testimony, `as soon as we walked out, opened the door and all, they had guns on us. And they said, you know, put your hands up against the wall and don't make a move. So, we just sort of turned to the left and put our hands up against the wall.'
"Officer Marshall had to walk past the miniwarehouse door to get to the suspects. As he approached he smelled burning marijuana. The odor was very strong. He had smelled marijuana before, attending classes on drugs, and had identified marijuana before.
"Officer Marshall testified that while at first he could not positively identify the butt that he saw on the floor to be marijuana, from outside the building, that when he got to the Defendant and smelled the marijuana and looked back inside the door he could identify it.
"He further testified that from outside of the building the substance `appeared to be marijuana.' (Supp.Trans. P-19)
"Under the plain view doctrine of Coolidge v. New Hampshire, 403 U.S. 443, 92 S.Ct. 2022, 29 L.Ed.2d 564 (1971), this Court finds that there was prior justification for an intrusion onto the property of Storsafe Mini-Warehouses in that the officers had `probable cause to believe that a burglary was taking place.' Secondly, this Court finds that Officer Marshall came across the evidence of the marijuana cigarette and the marijuana in the roasting pans inadvertently. He saw both pieces of evidence while moving toward the suspects to frisk them for weapons or burglary tools. Contraband was in plain view through the open door of the warehouse without the officers entering it. Thirdly, the Court finds that the objects discovered were immediately recognized as evidence of wrongdoing. Officer Marshall testified that both pieces of evidence appeared to be marijuana, relying on his senses of smell and sight.
"The Defendant argues that two conditions must exist in order to establish `exigent circumstances', an exception that permits the officers to intrude and seize evidence in plain view. First, Defendant states that the State of Alabama must show that a warrant could not have been obtained in advance. There is no question that the officers had no time to obtain a warrant in advance of intrusion on the premises of Storsafe Mini-Warehouses because they had probable cause to believe that a burglary was then in progress. As to the individual warehouse of Defendant, Donald Lentini, by leaving the door open Officer Marshall could smell and see evidence of marijuana from outside the individual warehouse.
"The Defendant also claims that there must be a clear and present danger, not merely a problematical one, that the evidence would be removed or destroyed if time were taken to obtain a warrant. In the case at hand, Officer Marshall observed that the cigarette butt was still burning, making it possible for this evidence to be destroyed by the time that a warrant could be obtained. Thus, he acted properly in seizing this evidence immediately.
"As to the marijuana found in the roasting pan, this Court believes that when police are legitimately on the premises and subsequently detect contraband as is set forth above, the additional requirement that the evidence be in clear and present danger of being destroyed is not essential since the search or seizure obviously is reasonable. In this particular situation, the probable cause that a burglary *1003 was being committed gave the police legitimate access to the Storesafe Mini-Warehouse area. The Defendant, by leaving the door of his individual warehouse open, permitted the police to obtain a clear view of marijuana therein.
"In fact, by leaving the door of the warehouse open, the Defendant negates his expectation of privacy under Rakas, supra, as to the marijuana. The Court of Appeals of Washington encountered a similar situation in State v. Proctor, [12 Wash.App. 274] 429 [529] P.2d 472 (1974). A Seattle police officer responded to a burglar alarm which was sounding in a real estate office owned by Proctor. When the officer arrived, he discovered that a basement door was open and the alarm was still operating. The officer entered the building but found no one inside. However, he did observe a great deal of office equipment, and other items, including an outboard motor, movie projectors and radios.
"Previously, this officer had been told by an informant that Defendant Proctor was engaged in selling and storing stolen property. He, therefore, copied the serial numbers of the calculators. The Court held that since the officer was legitimately on the premises, and was aware of the possibility of theft, he had probable cause to believe he was looking at stolen property.
"The Motion to Suppress as it pertains to marijuana be and the same is hereby OVERRULED.
"DONE this the 4th day of May, 1981.
"/s/ Joseph D. Phelps
"Circuit Judge"
We adopt this order as the opinion of this Court. When conflicting evidence is presented on the issue of probable cause to search and the trial judge finds that probable cause did exist, great weight must be given his judgment. Weatherford v. State, 369 So.2d 863 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.1979).
We have searched the record and found no error prejudicial to the defendant. The judgment of the Circuit Court is affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.