TYSON, Judge.
Ray Charles Jackson was indicted by the Houston County Grand Jury for the August 15, 1981, rape of prosecutrix in violation of Ala.Code § 13A-6-61 (Amended 1977). Trial was had with the jury finding him guilty as charged. Subsequently, the trial court fixed his punishment at life imprisonment. From that conviction he now appeals in forma pauperis.
Appellant raises no issue on appeal as to the sufficiency of the state’s evidence. Nevertheless, a review of the record thoroughly convinces us of appellant’s guilt. Thus, only a short narration of the facts is necessary.
Sometime between 9:15 p.m. and 9:30 p.m. on August 15, 1981, the prosecutrix, who was babysitting Chad and Wesley Bell at their home in Ashford, heard a knock on the front door. She answered it and was immediately assaulted by appellant who was holding a pocket knife. Appellant entered the home and ordered the prosecutrix and the children to lie on the floor. Shortly thereafter, he escorted the prosecutrix to the bathroom and afterwards a bedroom. In both rooms, the prosecutrix was forced to perform sex acts with appellant. *1017 Throughout the one to one and one-half hour ordeal, the prosecutrix pled not to be hurt. Subsequently, appellant left only to be apprehended a few hours later at a home about one-quarter of a mile away from the Bell residence.
I
Contrary to appellant’s contention, his in-court identification by the prosecutrix was not tainted by an impermissibly suggestive four man show-up conducted about one to one and one-half hours after the incident.
At appellant’s hearing on his pre-trial motion to suppress, the prosecutrix testified that on the night of the attack, there was a lamp and television on in the living room of the Bell residence. She stated that the lighting in the living room and one of the bedrooms was sufficient for her to clearly view the assailant. She stated that his face was very close to hers for some time and it felt unshaven. She described him as a black male, about six feet tall, of medium build, wearing blue jeans and a vest without a shirt. The prosecutrix testified that her assailant remained in the house between one to one and one-half hours.
Subsequent thereto, the prosecutrix was asked to view four black males brought to the Bell residence. Present with her were her parents and Houston County Deputy Sheriff Leon Baxter. She testified that no one stated or suggested that her assailant was one of the men. An outside light was on and as the prosecutrix viewed each individual an additional light was shown on him. The prosecutrix viewed each individual separately. They were all of the same race, were of similar build and height, and had similar hair styles. One individual, appellant, could not be seen clearly by the prosecutrix as he would not turn his face directly toward her, distorted his facial features, held his head down and arms up to shield his face, limped as he walked, and would not maintain an erect posture. He was wearing shorts rather than blue jeans when the prosecutrix viewed him. Consequently, she requested to view him again and asked that he wear a vest the police had procured from the bedroom in which appellant had earlier been found. After the second viewing, the prosecutrix positively identified appellant as her assailant. He was then arrested. The prosecutrix testified that she based her identification not on the vest but rather on what she had observed during the attack.
Further testimony elicited at the hearing revealed that the four men voluntarily assented to accompany the police officers to the Bell residence and participate in the show-up after they had been informed of the reason for the request.
The appellant testified that he voluntarily participated in the show-up. He stated that in his statement given to the police, he had admitted that the vest found in the bedroom and worn at the show-up belonged to him. He stated that he was without the services of legal counsel at the time of the show-up.
Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Williamson v. State, 384 So.2d 1224 (Ala.Cr.App.1980). In assessing the reliability of the identification, the effect of suggestive procedures in the pre-trial confrontation and identification must be weighed against the indicators of the ability of the witness to make an accurate identification. The factors in assessing the witness’s ability to accurately identify include the opportunity of the witness to view the criminal at the time of the crime, the witness’s degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, supra. These factors must be weighed in their totality and then balanced against the possible suggestiveness of the pre-trial identification procedures to determine the admissibility of the identification. Manson v. Brathwaite, supra. The totality of the circumstances must be examined. Stovall v. Deno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
*1018 The fact that appellant was viewed a second time is a consequence of his lack of cooperation and attempts to alter his appearance in the first instance. It is conceivable that had the prosecutrix been able to clearly view appellant the first time, a second showing would have been unnecessary. No error can be predicated on such. Peavy v. State, 368 So.2d 43 (Ala.Cr.App. 1979). In addition, the fact that appellant wore his vest during the second showing did not tend to unduly suggest him as the culprit. He was merely wearing the same or similar clothing he had on at the time of the crime. Brazell v. State, 369 So.2d 25 (Ala.Cr.App. 1978), cert. denied, 369 So.2d 31 (Ala.1979); Griffin v. State, 356 So.2d 723 (Ala.Cr.App.), cert. denied, 356 So.2d 728 (Ala.1978); Childers v. State, 339 So.2d 597 (Ala.Cr.App.), cert. denied, 339 So.2d 601 (Ala.1976); Fletcher v. State, 337 So.2d 58 (Ala.Cr.App.1976).
Moreover, when an in-court identification is shown to have a basis independent of any pre-trial identification or confrontation, it is properly admitted into evidence. Matthews v. State, 401 So.2d 241 (Ala.Cr.App.), cert. denied, 401 So.2d 248 (Ala.1981); Thomas v. State, 399 So.2d 915 (Ala.Cr.App.1981); McLoyd v. State, 373 So.2d 1175 (Ala.Cr.App.), cert., denied, 373 So.2d 1185 (Ala.1979); and cases cited therein.
After a complete review of the record, we find nothing at the pre-trial confrontation to have been impermissibly suggestive so as to create a substantial risk of misidentification and thus taint the in-court identification of appellant by the prosecu-trix. Further, we find in the record an independent basis for the in-courf identification. Consequently, the trial court properly denied appellant’s motion to suppress. Thomas, supra; McLoyd, supra; Donahoo v. State, 371 So.2d 68 (Ala.Cr.App.), cert. denied, 371 So.2d 74 (Ala.1979); Speigner v. State, 369 So.2d 39 (Ala.Cr.App.), cert. denied, 369 So.2d 46 (Ala.1979).
II
Appellant has no constitutional right to counsel at a pre-indictment line-up. Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); King v. State, 395 So.2d 489 (Ala.Cr.App.1981); Williamson, supra; McGee v. State, 383 So.2d 881 (Ala.Cr.App.), cert. denied, 383 So.2d 884 (Ala.1980); Deloach v. State, 356 So.2d 222 (Ala.Cr.App.1977), cert. denied, 356 So.2d 230 (Ala.1978). Thus, appellant’s contention is without merit.
Ill
Appellant also challenges the identification made by eight year old Chad Bell, one of the boys the prosecutrix was babysitting on the night of the attack.
Initially, we find no abuse of the trial court’s discretion in finding Chad competent to testify. Noble v. State, 253 Ala. 519, 45 So.2d 857 (1950); Puckett v. State, 213 Ala. 383, 105 So. 211 (1925); Crenshaw v. State, 205 Ala. 256, 87 So. 328 (1921); Harville v. State, 386 So.2d 776 (Ala.Cr.App.1980); Roberson v. State, 384 So.2d 864 (Ala.Cr.App.), cert. denied, 384 So.2d 868 (Ala.1980); Pennington v. State, 57 Ala.App. 655, 331 So.2d 411 (1976); Hacker v. State, 31 Ala.App. 249, 15 So.2d 336, cert. denied, 244 Ala. 649, 15 So.2d 339 (1943); Ala.Code § 12-21-165 (1975).
At appellant’s in camera hearing held during the course of the trial, Chad testified that, during the early morning hours of August 16, 1981, he was asked to come outside of his house and look at someone to determine whether that person was the individual who had been at his house earlier that evening. Chad stated that no one suggested or told him that the person he was about to view was in fact the prosecutrix’ assailant. He stated one black male escorted by some police officers was exhibited. The individual was handcuffed and wearing the same vest Chad had earlier seen on the man who had been in the house. Chad ran to his mother and positively identified appellant as the assailant stating, “That’s him.” Chad stated that he did not know why appellant was handcuffed but thought he must have been in trouble. He testified *1019 that he did not identify appellant because of the vest or handcuffs but rather because he recognized his face.
Subsequent thereto, Chad had a second opportunity to view appellant at the county jail. He was accompanied by his mother, the prosecutrix and her parents. Appellant was the only person in the cell when Chad saw him. He did not remember whether anyone stated that the occupant of the cell was the person who had assaulted the pros-ecutrix, but stated that no one pointed appellant out to him. Due to the distance from which he viewed appellant, Chad asked his mother “if that was him” to which she affirmatively replied. Chad testified that he did not identify appellant because he was the only person in the cell.
Chad twice had the opportunity to see appellant in his residence on the evening of August 15. Both instances occurred in the living room area of the house where both a lamp and a television were on. On the second occasion when appellant was leaving, appellant asked Chad to shake his hand. The record is void as to the length of time Chad observed appellant in the house.
The instant question is governed by the standards set forth in Part I, supra of this opinion. In addition to that which we have previously stated, we note that there is no prohibition against a viewing of the suspect alone in what is termed a “one-man show-up” when such occurs near the time of the alleged offense. Matthews, supra; King, supra; Donahoo, supra; Peavy, supra. While a show-up by its inherent nature is suggestive because the witness is given no other choice, Brazell, supra; such is not per se violative of due process. The question is whether under the totality of the circumstances the identification was reliable. Cartee v. State, 390 So.2d 1121 (Ala.Cr.App.), cert. denied, 390 So.2d 1126 (Ala.1980). The fact that the suspect was in handcuffs is merely a factor to consider in determining reliability. Merely because an unusual number of policemen were present at the time of the pre-trial confrontation does not render the procedure so unduly suggestive as to violate due process. Pickett v. State (Ala.Cr.App. Ms. Mar. 2, 1982); King, supra; Cartee, supra.
The totality of the circumstances convinces us to the conclusion that the pre-trial show-ups were not so suggestive as to create a very substantial likelihood of misiden-tification. Consequently, the trial court properly denied appellant’s motion to suppress Chad Bell’s identification.
IV
Appellant contends that the vest taken from the bedroom in which he was found and subsequently used at the show-up was the product of an illegal search and seizure. He does not contend that the vest was improperly admitted into evidence as appellant himself moved for its introduction.
Houston County Deputy Sheriff Leon Baxter testified that he arrived on the scene of the assault around 12:14 a.m. on August 16. After being duly qualified in the training and handling of tracking dogs, he stated that he used two dogs to track the scent of the assailant. One was used as the primary or lead dog while the other was used as a backup. He stated that there were numerous tracks around the Bell residence. After the dog became familiar with the scent of the suspect, it led Deputy Baxter and his assistant to the home of an unknown black woman[1] about one-quarter mile from the Bell residence.
Deputy Baxter followed the dog to the unlit house and onto the front porch where he knocked on the door. He was in uniform at the time. Subsequently, a black woman answered and Deputy Baxter asked her if her husband was home to which she negatively replied. He then inquired whether she had any sons, to which the woman affirmatively replied stating that two of them were inside and the other she had not *1020 seen since the night before. She stated that they had been home all evening. Deputy Baxter asked whether he could talk to them to which the woman assented. She left the front door only to return moments later with her two sons. Deputy Baxter stated that while the two boys were present, his tracking dog did not react to them, but rather attempted to go inside the house. Deputy Baxter then inquired whether there were any other black males inside the house to which the woman replied that there were three more in the rear bedrooms. Deputy Baxter asked if he could speak to them. He testified that he thought the woman would summon them as she had done with her sons. However, she told Deputy Baxter to go inside and talk to them.
Deputy Baxter went inside the house and to a bedroom where he awakened appellant, and asked him if he could talk to him to which appellant replied, “If I done anything, I was drunk.” He further asked appellant had he been anywhere that evening or what time did he come in to which appellant stated, “I haven’t been nowhere.” (R. 180) Another black male occupying the same room as appellant was awakened and asked similar questions as was the third individual found in another room. At that time Deputy Baxter saw, inter alia, a vest lying on the bed. He left appellant and the others inside while he went outside to talk to Lieutenant Frankie Paschal of the Houston County Sheriffs department. During their conversation, Deputy Baxter was informed that the assailant had been wearing a vest. Deputy Baxter testified that about thirty minutes after he had first entered the house, Lieutenant Paschal asked the woman would she mind if they searched the house to which she replied, “No, go ahead. I have nothing to hide.” (R. 181) Both officers entered the house and seized the vest earlier seen by Deputy Baxter as well as two pairs of shoes.
Deputy Baxter stated that no one was under arrest when the request was made of the four men to participate in a show-up. He stated that they all were informed that they did not have to go. Appellant did not object to participating. Deputy Baxter testified that he never had a description of the suspect while tracking him. He stated that he did not know the black woman’s name, did not ask her if she owned the house, and did not have a search warrant when he entered it. Deputy Baxter testified that he did not know who owned the vest when he first saw and later seized it.
Quite frankly, we fail to see the error complained of by appellant. Appellant himself moved for introduction of the vest into evidence that he had earlier attempted to suppress. The record established the reasonable inferences that he was not a member of the family residing at the home and had no proprietory or possessory interest in it. Further, it is arguable whether he had a legitimate expectation of privacy in the bedroom merely because he was found there asleep. Nevertheless, such is a relevant but not controlling or determinative factor in deciding one’s expectation of privacy. Lentini v. State, 406 So.2d 998 (Ala.Cr.App.1980), cert. denied, 406 So.2d 1003 (Ala.1981). It is clear that appellant had an interest in the property seized, but he did not assert such at his motion to suppress. Rather, the state established it.
Furthermore, under the test for determining whether one has standing to assert a violation of Fourth Amendment rights, United States v. Salvucci, 448 U.S. 82, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), it is doubtful that appellant had a legitimate expectation of privacy from governmental invasion in the area searched. See Collier v. State, 413 So.2d 396 (Ala.Cr.App.1981), affirmed, 413 So.2d 403 (Ala.1982).
Nevertheless, the record clearly establishes that the search of the home was done with Ms. MeCree’s consent. Thus, no search warrant was necessary. As was stated in Taylor v. State, 399 So.2d 881, 891 (Ala.1981):
*1021 “A search warrant is not required when the party in control of the searched premises gives his consent to the search, Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The consent, however, must be ‘freely and voluntarily given,’ and the prosecution has the burden of proving voluntariness, Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Consent given after a claim of authority to search by a police officer is not valid, since he has in effect told the occupant of the house that he has no right to resist the search. ‘Where there is coercion there cannot be consent.’ 391 U.S. at 550, 88 S.Ct. at 1792. However, ‘knowledge of a right to refuse is not a prerequisite of a voluntary consent.’ 412 U.S. at 234, 93 S.Ct. at 2051. Although consent may not be coerced, either explicitly or implicitly, ‘[vjoluntariness is a question of fact to be determined from all the circumstances.’ 412 U.S. at 248-49, 93 S.Ct. at 2058-59. While knowledge of the right to refuse consent to a search, or lack thereof, is a factor to be considered in assessing volun-tariness, it is not determinative. 412 U.S. at 249, 93 S.Ct. at 2059.”
Consequently, we find no error in the trial court’s ruling on appellant’s motion to suppress.
V
Appellant asserts that the trial court erred in denying his motion for a continuance.
After the state had rested and appellant’s motion to exclude the state’s evidence had been denied, appellant made his motion to continue the case until that time when a witness he had subpoenaed would return from his vacation and thus become available. The record offers no other evidence to confirm the above statement of appellant’s counsel. Apparently, appellant had made his motion about one week prior to trial but because the state agreed to stipulate to admitting the witness’s report, the trial judge [2] denied it. Appellant argued at trial that the stipulation would be inadequate as there were other matters to which the witness could testify that “might possibly clarify his report or explain it better.” (R. 357) No other showing was made concerning what the witness’s testimony would have been or whether it would have been of benefit to appellant. Nevertheless, appellant agreed to the stipulation and the trial court again denied his motion.
As was stated in Watson v. State, 389 So.2d 961, 964 (Ala.Cr.App.1980): “The rule is well settled that the granting or denial of a motion for continuance lies within the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of that discretion.” (Citations omitted). A reversal of conviction because of the trial court’s refusal to grant a continuance requires “a positive demonstration of abuse of judicial discretion.” Beauregard v. State, 372 So.2d 37 (Ala.Cr.App.), cert., denied, 372 So.2d 44 (Ala.1979).
Under the facts of the instant cause, we find no abuse of the trial court’s discretion in denying appellant’s motion. Stewart v. State, 398 So.2d 369 (Ala.Cr.App.), cert. denied, 398 So.2d 376 (Ala.1981); Clark v. State, 36 Ala.App. 159, 57 So.2d 375 (1951), reversed on other grounds, 257 Ala. 95, 57 So.2d 384 (1952).
VI
Appellant complains that a comment made by the state during its closing argument impermissibly referred to his failure to testify. Appellant did not take the stand and offered no witnesses other than the stipulated testimony previously discussed.
We quote the complained of comment: “MR. VALESKA: The witnesses for the State got up there and told you what happened out there. The State’s testimo *1022 ny, and this is important, the State’s testimony is uncontradicted—
“MR. LITTLE: Judge—
“MR. VALESKA: —uncontradicted—
“MR. LITTLE: Judge, I make an objection on that ground.
“THE COURT: Yes, sir. Make your argument.
“MR. LITTLE: I object to that argument, Judge, on the implication that my client has not taken the stand.
“THE COURT: I sustain the objection.
“MR. LITTLE: I’d ask for a mistrial.
“THE COURT: Your motion for a mistrial is overruled. Go ahead.” (R. 364)
While there appears to be some conflict as to what test should govern prosecutorial comments directed either directly or indirectly at the defendant’s failure to testify, Cf. Ex Parte Yarber, 375 So.2d 1231 (Ala.1979), with Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975) (where Yarber utilizes the virtual identification doctrine while Beecher had earlier disapproved of such in favor of a standard based upon “the possibility that a prosecutor’s comment could be understood by the jury as referenced to failure of defendant to testify .... ”), both would allow such a comment as that quoted above.
In the instant case, appellant pled not guilty thereby denying commission of the offense. No special defense was pled. His spontaneous statements, made to Deputy Baxter, indicated the possibility that other witnesses could exist to substantiate his plea. In addition, the above comment carried no negative import, but rather was a positive statement concerning what the state had brought forth in terms of proof as opposed to a reference negating what appellant had presented. See Padgett v. State, 45 Ala.App. 56, 223 So.2d 597, cert. denied, 284 Ala. 732, 223 So.2d 603 (1969). Furthermore, the comment was near identical to that expressly approved in Beecher.
Consequently, we hold the above comment does not refer to appellant’s failure to testify. Griffin v. State, 393 So.2d 523 (Ala.Cr.App.1981); Thompson v. State, 382 So.2d 1184 (Ala.Cr.App.1980); Cummings v. State, 374 So.2d 421 (Ala.Cr.App.1979); Diamond v. State, 363 So.2d 109 (Ala.Cr.App.1978); Robinson v. State, 352 So.2d 11 (Ala.Cr.App.), cert. denied, 352 So.2d 15 (Ala.1977); Gissendaner v. State, 338 So.2d 1025 (Ala.Cr.App.), cert., denied, 338 So.2d 1028 (Ala.1976); Whistenant v. State, 50 Ala.App. 182, 278 So.2d 183, cert. denied, 291 Ala. 802, 278 So.2d 198, cert. denied, 414 U.S. 1066, 94 S.Ct. 573, 38 L.Ed.2d 470 (1973); White v. State, 44 Ala.App. 312, 208 So.2d 222 (1968); and cases cited therein. Thus, appellant’s contention is without merit.
YII
Appellant contends that the trial court erred in refusing several written requested charges. (Vol. 3, p. 406-413).
The trial court gave an extensive oral charge to which no exception was taken. In addition, the trial judge gave 12 written requested charges. (Vol. 3, 394-405). As to the refused charges, we have carefully examined each of these and find that such were properly refused as being either affirmative in nature, incorrect statements of applicable law, argumentative under the evidence, and therefore invasive of the province of the Jury, or were fully and substantially covered in the trial court’s oral charge, or other given written charges. Therefore, their refusals were proper. Section 12-16-13, Code of Alabama 1975.
In addition the appellant made no objection or took no exception to their refusal.
This court is not required to review the merits of requested charges when the accused does not reserve any exceptions to the trial court’s refusal at the trial court level. Allen v. State (Ala.Cr.App.1981) Ms. November 24, 1981. The “automatic exception” rule in criminal cases is no longer the law in Alabama. Aden, supra.
We have examined each issue raised by appellant in brief. We find no error and therefore this cause is hereby affirmed.
AFFIRMED.
All the Judges concur.

. In their briefs, both appellant and the state refer to the woman as Ms. Eunice McCree, although no mention of her name was made at trial. However, her name does appear on the indictment as a witness for the state.

. A trial judge other than the one presiding over appellant’s trial initially ruled on the above motion.