This is an appeal from two judgments of conviction and sentence based on two separate indictments, one for robbery in the first degree and the other for an attempt to commit the crime of rape, as defined in one respect by Alabama Criminal Code § 13A-6-61 (a)(1) as follows:
 "A male commits the crime of rape in the first degree if:
 "He engaged in sexual intercourse with a female by forcible compulsion;
". . . ."
The alleged victim was the same person in the two offenses. According to the undisputed evidence, whatever happened as between defendant and the alleged victim occurred in the home of the victim, on the same day and within a few minutes of the same time.
Upon agreement between the State and defendant, with the approval of defendant's attorney, the two cases were consolidated for trial before a jury. After a sentence hearing conducted after the verdicts, the court sentenced the defendant to imprisonment for fifty years in the robbery case and to ten years in the attempted rape case. Thereafter, it being shown to the court that a new attorney had been appointed to represent defendant after the *Page 950 
verdicts of the jury, another sentence hearing was conducted with a new attorney present, which resulted in the imposition of the same sentences as before. The same attorney representing defendant on the second sentence hearing represents him on appeal in both cases, which continue to be consolidated in this Court.
No issue is presented on appeal as to the sufficiency of the evidence to support the verdict of the jury as to the robbery case. One of the two issues presented on appeal challenges the sufficiency of the evidence to support the verdict of guilt of an attempt to rape. We will limit our narrative of the evidence to that part thereof pertaining to the attempted rape case. We note beforehand that defendant stoutly denied as a witness on the trial that he was ever with the alleged victim at any particular time, that he was ever in her home, and that he was ever guilty of any offense against her. There was no contention on the part of the defense that the alleged victim was not robbed as she stated in her testimony. As to her testimony as to what occurred in her home, the defendant's contention as to the factual issue presented was that her testimony charging the defendant was a case of mistaken identity by the victim of the robbery.
As is often true in prosecutions for rape or attempted rape, the only eyewitness testimony presented by the State is that of the victim herself, and as the defendant in the instant case denied his presence at the time, one must look exclusively to the testimony of Mrs. Sally Gerry to determine whether an attempt to rape occurred. According to her testimony, she lived at 706 Iris Lane on January 30, 1980, and she or her husband had previously run an advertisement in one of the daily papers advertising his or her automobile for sale. While she was alone in the house about noon on January 30, a man telephoned inquiring about the automobile. She discussed with him the "price" and "some of the features on the car and things." About 1:00 P.M. the man came to her home. She positively identified the man as Gary Wade Williams, the defendant, who knocked on the door and made known that he wanted to look at the car. Without then letting him in the house, she told him to look at the car, which he apparently did, and then returned to the door and stated he would like to drive the car. She replied that as soon as she put her baby down, which she then had in her arms, she would get in the automobile with him. She put her then sleeping baby in a swing and then, accompanied by her twenty-two-month-old child, rode around a short distance in the automobile. The man expressed considerable interest in the automobile, and when they returned to the house he said, "Well, I really like it. I think this is just what I am looking for." And then he said, "Can I use your phone?" Having indicated her permission, they went into the house. Her testimony continued as follows:
 ". . . So he went in and he called. He went through the living room into the kitchen. Our telephone was down in the den. It was a remodeled garage. I stayed up in the living room and left the door open a little bit at first. Then he came back in and said that his friend was going to come by and pick him up."
According to Mrs. Gerry's further testimony, considerable time passed without anyone else coming to the house. The man made several efforts to call someone again; he dialed the telephone several times without any apparent success. After some time, he displayed a handgun and ordered her to put the two-year-old son in a room and "make sure he stays in his room." She "put the baby down real fast" and the "twenty-two-month-old in his room." When she returned from spanking the older child "to make sure he stayed in the room," the man said, "I want your money." After she offered him the contents of her purse, he replied that he knew that there was more money in the house. She testified:
 ". . . I can't remember exactly how he put it. He said, `There has to be something of worth in here.' And he said, `Let's go back to the bedroom.' I said, *Page 951 
`My husband has a jar of money in there and it's only change also.' I know he had taken it out before and we had about — everytime we had taken the money out we had about $40 or $50 in there. He said, `Just go on back there.' At this time he had the gun out of his coat and he was pointing it toward me. We walked back into the bedroom and I showed him the can. He said, `I don't want that.' Then he said, `Take off your clothes.' I said, `Please don't do this.' He said, `Take off your clothes.' Then I started telling him, you know, that I had just had the baby and that I had just gotten out of the hospital just the week before and, you know, that I was hurting real bad and I just didn't want him to do anything. Then he took his arm and he pushed me on this arm. He pushed me on the bed. When I was on the bed he said, `Take off your clothes.' I said, `Please don't do this.' I told him that my husband would come home at anytime because he was a coach. He knew the car was for sale and he would come home at any time. Then I got up on the other side of the bed and he went back around. All this time he was still holding the gun on me. He said, `Take off your clothes.' I said, `Please, that money is probably — I have no idea how much it is, but it could be at least $60 or more.' At that time I didn't know that my husband had put all those quarters in there. There was at least 110 that he had just put in. So I went over there and I told him — I said, `Please take this, and you can have the microwave and you can have the TV. You can have anything you want, but please don't do this.' We were over on the other side of the bed and I was holding up the money and I said, `I can put it in a sack for you.' When I did that he started to reach out for me again and I reached for him and I held his hand for just a moment and I looked right into his eyes and I said, `Please don't do this,' and I begged him. Then he looked at me and said, `All right. Go get a sack.' So I went to get the sack and I put it in there real fast. He put it underneath his coat and he said, `You get into the room with your little twenty-two-months-old boy and you stay in there and don't come out for at least 10 minutes.' Then he said, `If you call the police, then I'm going to come back and burn your house down and you will never know.'"
Alabama Criminal Code, § 13A-4-2 (a) provides:
 "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
There can hardly be any question as to the existence of the required overt act. The alleged victim's testimony that "He pushed me on the bed," when considered with all the other circumstances, suffices. Whether there was an intent to commit the crime of rape requires further consideration, especially so in view of the fact that unquestionably the assailant had during most of the time involved the intent to commit the felony of robbery, which he accomplished. We are favorably impressed by the strong argument in the brief of counsel for appellant to the effect that the evidence failed to prove beyond a reasonable doubt the defendant had the intent to rape the alleged victim, but we are not so favorably impressed as to conclude that a jury issue as to such intent was not presented by the evidence. We fully realize the difficulty of fathoming the mind of defendant to such an extent that it can be determined with absolute certainty that his conduct included an intent by him to engage in sexual intercourse with Mrs. Gerry by forcible compulsion, but we think the evidence shows conclusively that she thought that he had that intent and that what she thought prompted her to plead with him and to pay him not to do so. No human being is in a better position to determine whether such intention existed than the alleged victim and her aggressor. Having no testimony from the aggressor as to his intention, the only reasonable conclusion, we think, is that some time during the hassle between the two the man with the gun intended to rape the defenseless woman he had pushed on the bed. The trial court was not in error in *Page 952 
refusing to grant defendant's motion to exclude the evidence in the case based on the indictment charging attempt to commit rape or in the submission of that issue to the jury for its determination.
The only other contention of appellant is that the "trial court erred when it failed to give the submitted written jury instructions, particularly those numbered 17, 20 and 22." We find no charge "numbered 17" in the record proper or in the transcript of the proceedings. Charges No. 20 and No. 22, refused by the trial court, are as follows, respectively:
 "I charge you, the jury, that if the circumstances as proven are capable of explanation of any reasonable hypothesis, consistent with the defendant's innocence and if the circumstances are capable of such explanation, then the defendant should be acquitted.
 "The presumption of innocence is legal proof of innocence. The defendant comes into court clothed with the presumption of innocence, and that presumption of innocence remains with him throughout the case until overcome by the prosecution. If after considering all the evidence, you believe a material elements of any charge with which this defendant is charged has not been proven beyond a reasonable doubt, then you must acquit the defendant."
As to defendant's requested Charge 20, we compare it with the following sentence in the court's oral charge:
 "The circumstances must exclude every other reasonable hypothesis except that of the defendant's guilt, and unless the circumstances do that beyond a reasonable doubt and to a moral certainty then the defendant cannot be convicted."
The oral charge contained substantially the same language as Charge 20, which renders innocuous the failure of the court to give the Charge 20.
Defendant's requested Charge 22, which was refused, contained some obviously misplaced words and confusing language. Furthermore, the first sentence is inaccurate in stating that the "presumption of innocence is legal proof of innocence." This goes too far. The presumption is to be considered as the equivalent of "evidence" of innocence, but it does not constitute "proof" of innocence. The court gave in its oral charge the law on the subject, as shown in part by the following:
 ". . . It is a matter of law and a matter of evidence in the defendant's favor that he comes into this trial presumed to be innocent. That is a Constitutional presumption that each of us have. When a person is charged with a crime and placed on trial for that crime, he is presumed to be innocent until such time as the State proves beyond a reasonable doubt and to a moral certainty that the defendant is guilty of the crime with which he has been charged . . . ."
The trial court was not in error in its refusal of defendant's Charge 22.
The judgments of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.