Ranny LeGary Johnson was indicted for the offense of attempted rape in the first degree, in violation of § 13A-4-2, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and, following a sentencing hearing, the trial court sentenced appellant to life imprisonment in the penitentiary pursuant to the Habitual Felony Offender Act.
The prosecutrix testified that she was employed at the Bay Food Store in Dothan on July 28, 1984. This was a convenience store which had gas pumps. The restrooms were located on the outside of the store. On the night of this incident (July 28, 1984) the prosecutrix worked alone from 7:00 p.m. until closing at midnight. At approximately 12:20 a.m., she saw a blue Honda motorcycle drive up to the store. She went inside the store, locked the door, and turned off the gas pump lights. The man driving the motorcycle walked up to the door and she informed him that she was closed. She stated that this man got mad and walked away. This man had a beard and long hair. He was dressed in blue jeans and a red shirt which had white writing on it.
At approximately 12:30 a.m. the prosecutrix received a telephone call. The caller told her that he wanted to "f____" her. He hung up the phone upon her asking who was calling. Shortly thereafter she received another telephone call. When she answered the phone the caller told her that his name was Tom and that he was riding a Honda motorcycle. He then asked her what time she got off work and again stated what he would like to do with her. The prosecutrix told the caller that her boyfriend was going to be there any minute to pick her up and she hung up the phone. She began to lock up the store and remembered that her purse was in the bathroom. She left the store and walked to the bathroom. As she was exiting the bathroom a man appeared at the door. He had a knife in his hand and forced her back inside the bathroom.
She described this man as having long hair and a beard. He was wearing a red shirt which had white writing on it and blue jeans. She described the knife as having a white handle with brown streaks on it. The man was heavyset, approximately 190 pounds. She further stated that this man was the appellant. *Page 654 
The appellant, Johnson, instructed her to get down on her hands and knees or "he would cut her". He then turned the bathroom light off. After the prosecutrix was on her hands and knees, the appellant turned the light back on. He then unzipped his pants and took his "penis" out. He told her that "he wanted to get off and that he wanted to f____ me and that he wanted me to give him a blow job." (R. 16). She told the appellant no and he then took her hand and placed it on his penis. The prosecutrix jerked her hand away and stood up by the sink. He then jerked at her pants, broke a button off of them and pulled her pants down. She pulled her pants back up and told him that the police would be coming soon to check the store. The appellant backed away from her and started cursing. The prosecutrix opened the bathroom door and ran inside the store. She then called the police. While she was on the phone she heard a motorcycle leaving the scene.
She later talked to David Kirkland, a police officer with the City of Dothan, and described the events that took place. She described the man, the motorcycle, and the knife. Kirkland asked her to come to the police station and look at some mug shots but she was unable to identify anyone. Upon returning to her car which was parked at the Bay Food Store, she found a note from Officer Kirkland asking her to come to the Leon Motel. Upon arrival at the Leon Motel, she met with Officer Kirkland who informed her that they had someone for her to view. She stated that she had been with her assailant for approximately 15 minutes during the incident. She entered Officer Kirkland's car and they drove to room 263. The lights of Kirkland's car were shining on the door to room 263. Two police officers knocked on the door and the appellant opened the door. She identified the appellant as the man who had the knife earlier that night. Kirkland then exited the car and told the officers that appellant was their man. The officers then handcuffed the appellant and read him his Miranda rights. (R. 36). Kirkland then brought a knife and a shirt out to the car and she identified the knife as having been used on her and the shirt as having been worn by the man at the store.
Charles Merrow testified that he was a patrolman for the City of Dothan Police Department. The night of July 28/29, 1984, he received a "be-on-the-lookout" call over the radio. He was advised that the suspect was a white male approximately five feet ten inches tall and weighing around 190 pounds. The suspect was described as wearing a red shirt and blue jeans, having a beard and long hair, and driving a blue Honda motorcycle with a sissy bar on the back. Merrow began patrolling the area and stopped at the Bay Food Store to talk with Kirkland. He then proceeded to the Carriage House Lounge and talked to the doorman. From there he went to the Baker Motel and the Walker Motel and talked with the night clerks. He then drove to the Leon Motel and checked the parking lot. He found a blue Honda motorcycle, matching the description given, parked in front of room 263. He talked to the night clerk at the motel and then contacted Kirkland.
Kirkland brought the prosecutrix around to room 263 and Officers Williams and Harden knocked on the door to that room. Appellant looked out the window of the room and, after the officers identified themselves, opened the door and stepped out of the room. Merrow asked the appellant for some identification which was produced. Merrow then stated that positive identification had been made by the victim and the appellant backed inside the room. The appellant was placed under arrest and Merrow performed a pat-down search of him. This search produced a lock-blade knife with a white handle and brown streaks from the left hip pocket of the blue jeans appellant was wearing. Merrow turned this knife over to Kirkland and then looked around the room. He saw a red shirt lying on the dresser and several other items which were later confiscated by the officers.
David Kirkland testified that he was a policeman with the Dothan Police Department. *Page 655 
He received a report of an assault at approximately 12:58 a.m. on July 29, 1984, and he proceeded to the Bay Food Store. Upon his arrival he gathered information from the victim and received a description from her. He stated she described the man as having a beard and long hair, wearing blue jeans and a red shirt with white writing, driving a blue Honda motorcycle with a sissy bar on it and that he was approximately five feet ten inches tall and weighed about 190 pounds. The victim also gave him a description of the knife used in the attack. The victim was taken to the police station where she viewed a photographic line-up, but was unable to pick anyone out.
Kirkland later met the victim at the Leon Motel and told her that they had located a possible suspect and wanted her to look at him. The victim got in the front seat of his car and they drove to room 263. They sat in his car with the headlights shining on the door to room 263 and two officers knocked on that door. The appellant came to the door and the victim identified him.
Kirkland stated that, as appellant was being arrested, he entered the room and saw a red shirt lying on the dresser. He took a knife, which was taken off of appellant's person, and the shirt to the victim and she identified these items.
Todd Tooke testified in appellant's behalf. He stated that in July, 1984, he and the appellant had been working together in Perry, Florida. On July 28, 1984, he and appellant left Florida at approximately 8:00 p.m. in route to Dothan. Appellant's motorcycle was in the trunk of Tooke's car. They arrived in Dothan at 10:30 or 11:00 p.m., and stopped at a convenience store to unload appellant's motorcycle. Tooke stated that appellant was planning on riding the motorcycle to Eufaula, Alabama, but that it started raining while they were unloading it at the store. Appellant asked Tooke where a good motel was and Tooke indicated that the Leon Motel was okay for the night. Tooke then left appellant at the store.
The appellant testified and denied that the events which the prosecutrix described ever took place. His testimony, in substance, was the same as Tooke's. He stated that, upon checking into the Leon Motel at approximately 11:00 p.m., he did not leave his room until arrested. He stated that the knife in question was found by the officers on the dresser and enclosed in a sheath. He further stated that he had not worn the red shirt in several months. He further stated that the officers took the red shirt out of his suitcase which was closed.
 I
The appellant argues that the trial court committed reversible error in allowing into evidence matters allegedly obtained through an illegal search and seizure. He specifically argues that the search of his motel room was not subject to any exception to the warrant requirement of the Fourth Amendment to the United States Constitution.
Under the Fourth and Fourteenth Amendments, a search without a warrant not based upon probable cause is, per se, unreasonble, subject only to a few specifically established and well-delineated exceptions: (1) in plain view; (2) with consent voluntarily, intelligently and knowingly given; (3) as incident to a lawful arrest; (4) in "hot pursuit" or emergency situation; (5) where exigent circumstances exist coincidental with probable cause; and (6) in "stop and frisk" situations.Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973); Scott v.State, 337 So.2d 1342 (Ala.Crim.App. 1976); Baker v. State,340 So.2d 854 (Ala.Crim.App.), cert. denied, 340 So.2d 860 (Ala. 1976); also, "inventory exception," States, 466 U.S. 170,104 S.Ct. 1735, 80 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and "open fields exception" Oliver v. United States, ___ U.S. ___,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); Maughan v. State,473 So.2d 1140 (Ala.Crim.App. 1985).
The evidence as to the search in question is in conflict. The defendant testified that the shirt seized by officers was packed in a *Page 656 
closed suitcase. He further stated that the knife seized by the officers was enclosed in a sheath and lying on the dresser of the motel room. The testimony of Officer Merrow indicated that, upon positive identification of the appellant by the victim, the appellant stepped back into his motel room. Officer Merrow and Officer Harden placed the appellant under arrest and conducted a pat-down search of him. They discovered the knife in question in the left hip pocket of appellant. This knife was identified by the victim as being the knife used by this appellant. Merrow stated that he turned and looked around the room and saw a red shirt "laying on the counter, just wadded up." (R. 81).
Sergeant Kirkland testified that, upon the arrest of appellant, Merrow retrieved a knife from appellant's pants pocket. He further stated that he saw a red shirt "laying on the dresser, on top of the dresser in plain sight, and matched the description of the clothing already described that the suspect was wearing, and I took it into my custody as evidence." (R. 96).
It is clear to this court after a review of the record that the items seized in the motel room were lawfully obtained by the officers in this cause. The knife was seized as being incident to a lawful arrest, i.e., having been taken from appellant's pocket during a pat-down of his person, and, further, matching the description given earlier by the victim who also gave a positive identification of this appellant. The shirt which was seized was lying in plain view in the appellant's motel room and was properly seized. The officers had facts available to them which sufficiently furnished reasonable cause to go forward with the investigation and search the motel room. See Retowsky v. State, 333 So.2d 193
(Ala.Crim.App. 1976).
Having thoroughly reviewed the record on this point, it is clear that the trial court did not err in allowing into evidence the admission of this evidence. Myers v. State,431 So.2d 1342 (Ala.Crim.App. 1982), cert. denied, 431 So.2d 1346
(Ala. 1983); Kitchens v. State, 445 So.2d 1000 (Ala.Crim.App. 1984).
 II
The appellant contends that the one-man showup conducted by the police was error and thereafter tainted the victim's in-court identification of him.
As set out above, the facts of this case indicate that, after having seen her assailant for some fifteen minutes during the incident at issue, the prosecutrix gave a thorough description of the suspect to the police. The record further indicates that she gave police a description of the vehicle which the appellant was driving. Some two hours later the police located a vehicle matching the victim's description and contacted her to conduct a "show-up of a possible suspect." Upon seeing the appellant, the prosecutrix immediately positively identified him as her attacker.
"Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98,97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Williamson v. State,384 So.2d 1224 (Ala.Cr.App. 1980). In assessing the reliability of the identification, the effect of suggestive procedures in the pre-trial confrontation and identification must be weighed against the indicators of the ability of the witness to make an accurate identification. The factors in assessing the witness's ability to accurately identify include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, supra. These factors must be weighed in their totality and then balanced against the possible suggestiveness of the pre-trial identification procedures to determine the admissibility of the identification. Manson v. Brathwaite, supra. The totality of the circumstances must be examined. Stovall v. *Page 657 Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)."Jackson v. State, 414 So.2d 1014, 1017 (Ala.Crim.App. 1982).
 "[T]here is no prohibition against a viewing of the suspect alone in what is termed a `one-man show-up' when such occurs near the time of the alleged offense. Matthews [v. State, 401 So.2d 241
(Ala.Crim.App.), cert. denied, 401 So.2d 248
(Ala. 1981)], supra; King [v. State, 395 So.2d 489
(Ala.Crim.App. 1981)], supra; Donahoo [v. State, 371 So.2d 68 (Ala.Crim.App.), cert. denied, 371 So.2d 74
(Ala. 1979)], supra; Peavy [v. State, 368 So.2d 43
(Ala.Crim.App. 1979)], supra. While a show-up by its inherent nature is suggestive because the witness is given no other choice, Brazell [v. State, 369 So.2d 25 (Ala.Crim.App. 1978), cert. denied, 369 So.2d 31 (Ala. 1979)], supra; such is not per se violative of due process. The question is whether under the totality of the circumstances the identification was reliable. Cartee v. State, 390 So.2d 1121 (Ala.Cr.App.), cert. denied, 390 So.2d 1126 (Ala. 1980)."
Jackson, supra at 1019.
After a thorough review of the record, we are convinced that the totality of the circumstances reveals that the identification of this appellant was reliable in this cause. The trial court acted properly in allowing the in-court identification of the appellant.
 III
The appellant contends that the trial court erred in failing to grant appellant's motion to exclude the evidence and motion for judgment of acquittal. He contends that the State failed to present sufficient evidence to make out a prima facie case.
The crime of rape is defined in § 13A-6-61 (a)(1), Code of Alabama as follows:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion . . ."
Alabama Code § 13A-4-2 (a) provides:
 "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
The facts elicited at trial directly bearing on this issue are as follows:
The prosecutrix testified that the appellant had a knife in his hand and told her to get down on her hands and knees or "he would cut her." While she was on her knees the appellant unzipped his pants and took his penis out. The appellant told the prosecutrix that he wanted to "f____" her and wanted her to give him a "blow job." When she refused, the appellant took her hand and placed it on his penis. She jerked her hand away and stood up. He then jerked her pants down, breaking a button off of them in the process. She told him the police would be there soon and pulled up her pants. Appellant began cursing and she ran out the bathroom door.
It is clear to this court that the State presented sufficient evidence to support the trial judge's conclusion that a prima facie case of attempted rape in the first degree was presented. It is equally clear that the evidence was sufficient to sustain the verdict against appellant, even though he denied the incident taking place. See Franklin v. State, 405 So.2d 963
(Ala.Crim.App.), cert. denied, 405 So.2d 966 (Ala. 1981);Cogman v. State, 424 So.2d 1355 (Ala.Crim.App. 1982), cert. denied, 424 So.2d 1355 (Ala. 1983); Williams v. State,445 So.2d 949 (Ala.Crim.App. 1983), cert. denied, 445 So.2d 949
(Ala. 1984). Harris v. State, 333 So.2d 871 (Ala.Crim.App. 1976).
For the reasons shown, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 658